## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| **RIEKE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:06-CV-275 AS** |
| | ) | |
| **AMERICAN FLANGE &** | ) | |
| **MANUFACTURING CO., INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants, American Flange & Manufacturing Co., Inc.'s ("Defendant" or "American Flange"), Motion to Dismiss for Lack of Personal Jurisdiction filed on August 28, 2006 (Docket No. 10).  American Flange filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) requesting this Court to dismiss the action on the basis that no specific jurisdiction exists, and American Flange lacks the substantial contacts with the State of Indiana required to establish general jurisdiction.  On April 18, 2007, Plaintiff, Rieke Corporation ("Rieke") filed a Response in Opposition to the Motion to Dismiss (Docket Nos. 37 (sealed) and 38 (redacted)) requesting the Court to deny the motion, or in the alternative to transfer the case to the United States District Court for the Northern District of Illinois.  American Flange replied on April 30, 2007 (Docket No. 43).  Oral arguments were heard on the motion in South Bend, Indiana on May 10, 2007, and the issue has been fully briefed.

# I. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(2) authorizes the court to dismiss claims for lack of jurisdiction over the person.  In federal court, a plaintiff need not include facts alleging personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner, Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  However, once the defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Cent. States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co.,* 440 F.3d 870, 875 (7th Cir. 2006).   The extent of this burden depends on how the issue of personal jurisdiction comes before the court.  Until an evidentiary hearing takes places to resolve any disputed material facts, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002) (emphasis in original).  If the defendant has submitted evidence, such as affidavits, in opposition, then the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.  *Purdue Research Found.,* 338 F.3d at 782-83 (commenting favorably on decisions from other circuits imposing this requirement). However, in making its *prima facie* case, the plaintiff is entitled to a favorable resolution of all relevant factual disputes and a liberal reading of the record. *Id.* at 782. In contrast, when an evidentiary hearing is held, the plaintiff must establish personal jurisdiction by a preponderance of the evidence.  *Purdue Research Found.,* 338

2

F.3d at 782 (citing *Hyatt Int's Corp.*, 302 F.3d at 713).

Here, neither party requested an evidentiary hearing, and the motion hearing held on May 10, 2007, was not an evidentiary hearing used to resolve any disputed material facts, but a hearing for the parties to explain their positions as submitted in their briefs and attached evidence.  Further, the parties agree,[1] and this Court finds, that the proper standard is that Rieke need only make out a *prima facie* case of personal jurisdiction, and that Rieke is entitled to a favorable resolution of all relevant factual disputes and a liberal reading of the record.  Here, the material facts are not necessarily disputed by the parties, but the question is whether American Flange's contacts with Indiana are the type of contacts required to establish jurisdiction.

With these legal principals in mind, the Court now turns to the instant motion.

## II.  RELEVANT PROCEDURAL HISTORY

Here the US Patent and Trademark Office, Trademark Trial and Appeal Board (TTAB) issued a final decision on June 5, 2006, and held that the trademarks that Rieke (the named Defendant in the TTAB proceedings) had applied to register should not be granted because they were functional and they lacked acquired distinctiveness.  On August 4, 2006, Rieke has filed this action seeking judicial review of this decision under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1).  On August 28, 2006, American Flange filed its Motion to Dismiss for Lack of Personal Jurisdiction (Docket

---

[1] *See* Def's Memo in Support at 4; Plf's Response at 5.

No. 10) pursuant to Fed. R. Civ. P. 12(b)(2) requesting this Court to dismiss the action on the basis that no specific jurisdiction or general jurisdiction exists.  Plaintiff Rieke requests the court to maintain jurisdiction, or in the alternative, should the court decide that it does not have jurisdiction, then Rieke requests that the Court transfer the action to American Flange's home district in the Northern District of Illinois pursuant to 28 U.S.C. § 1631 (Docket Nos. 37 (sealed) and 38 (redacted)).

## III.  FACTS[2]

Defendant American Flange and Plaintiff Rieke are competitors in the manufacture and sale of closure systems for 55 gallon drums.  Plf's Response at 2.

American Flange is a Delaware corporation with its principal place of business in Illinois.  *See* Def's Memo in Support at 3 (citing Aff. Of Scott Marple, Exb. A). American Flange does not have offices in Indiana, no sales people based in Indiana, no bank accounts are maintained in Indiana, it is not registered to do business in Indiana and does not have an agent for service of process in Indiana.  *Id.*  American Flange maintains a website; however, this website does not allow customers to purchase products online, as all of American Flange's sales are made through its sales staff primarily located in Illinois (although four salesperson are located outside Illinois but not in Indiana).  *Id.*

In the fiscal year of 2005 (which closed in October 2005), American Flange had total U.S. sales of almost $17,000,000.00 (seventeen million), only about 1% of which

---

[2] This Court takes judicial notice of the protective order issued in this case on January 25, 2007, and recites the facts in accordance with the same.

4

were made in Indiana.  Def's Memo in Support at 3.  In the current fiscal year of November 2005 through July 2006, American Flange has had total U.S. sales of $11,747,918- only $64,439 (or far less than 1%) of which were made to customers in Indiana.  *Id.*  Rieke relies heavily on American Flange's actual dollar or unit sales, and also points out that from the relevant period of 2002 to 2006, American Flange's sales in Indiana amounted to $960,000.00, and included sales of over 2,000,000 cap seals (at a cost of approximately one cent a piece).  Plf's Response at 2-3; Def's Reply at 2.  Rieke dissects the pertinent amount of sales into the amount of products sold and shipped into Indiana by American Flange.  Plf's Response at 3.  Further, Rieke asserts that American Flange directly markets its products to generate indirect sales to Indiana by attempting to convince drum fillers to specify by contract with their manufacturers that American Flange's TRI-SURE closure systems must be used on their new drum purchases.  *Id.*

Additionally, Rieke states that discovery has shown that American Flange has an established organization and practice set up to solicit and service business from Indiana customers and has made significant and consistent contacts with existing and potential Indiana customers in efforts to general direct and indirect sales.  Plf's Response at 4. Rieke's evidence to support this includes Mr. Markovic's personal visits, telephone calls and other communications to Indiana entities.  *Id.* (citing to Mr. Markovic's depo., Exb. B).  Specifically, Mr. Markovic visits Indiana in 2-to-3 day trips, 6 to 8 times each year as part of his responsibilities for sales in Indiana and other Midwest states.  *Id.* (citing to

5

Interrogatory Resp. No. 2, Exb. H).  American Flange also has others who handle and

assist the solicitation and services of American Flange's customers in Indiana as well as

in other states.  Plf's Response at 4-5 (citing to Mr. Markovic's depo., Exb. B).

Rieke asserts that "percent of sales" is not the legal standard for jurisdiction, and

that American Flange's direct and indirect sales to Indiana, as well as continuing

marketing efforts to Indiana customers results in sufficient contacts for this Court to

assert general personal jurisdiction over American Flange.  Plf's Response at 1.

American Flange argues that Rieke's "repeated references to invoices, to sales lunches

and phone calls do not change the fact that American Flange lacks the type of general

business operations 'tantamount to a physical presence' needed to support jurisdiction in

Indiana."  Def's Reply at 2.

## IV.  DISCUSSION

This Court may exercise jurisdiction over a non-resident defendant if the Court has

either specific or general jurisdiction over the defendant.[3]  *See Steel Warehouse of*

*Wisconsin, Inc., Leach*, 154 F.3d 712 (7th Cir. 1998)*, r'hrng denied.*  Specific jurisdiction

refers to jurisdiction over a defendant in a lawsuit arising out of or related to the

defendant's contacts with the forum.  *Id.*; *See International Shoe Co. v. Washington*, 326

U.S. 310, 315-17 (1945) (specific jurisdiction exists when the defendant's contacts with

---

[3] *See Hoffa Engineering, L.L.C. v. Craney*, 2007 WL 831820 (S.D.Ind. 2007) (regarding a
motion pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, as this Court
respectfully adopts and recites portions of the Honorable U.S. District Judge Tinder's discussion
herein).

the forum are related to the controversy and reach a minimum threshold).  General

jurisdiction is proper when the defendant has continuous and systematic general business

contacts with the forum, and it allows the defendant to be amendable to suit within that

forum regardless of the subject matter of the lawsuit.  *Id.*; *See Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (general jurisdiction exists when the

defendant has continuous and systematic contacts with the forum even though those

contacts have no relation to the underlying controversy).

Under Indiana law, the question of jurisdiction over a nonresident defendant

formally required a two-step inquiry, first to determine if the defendant's contacts with

Indiana fell under the state's long-arm provision, Trial Rule 4.4(A), and second to

determine if the exercise of jurisdiction comported with the federal constitutional

requirements of due process. *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d

966, 970 (Ind.Ct.App. 2004), *abrogated by LinkAmerica Corp., v. Albert,* 857 N.E.2d 961

(Ind. 2006).  In *LinkAmerica Corp.,* the Indiana Supreme Court determined that the two

steps had become one.  857 N.E.2d at 967; *see also, Litmer v. PDAUSA.com*, 326

F.Supp.2d 952, 955 (N.D.Ind. 2004) (holding that the 2003 edition to Ind. T.R. 4.4(A)

expanded personal jurisdiction to the full extent permitted by the Due Process Clause and

eliminated any need to identify a specific jurisdictional basis from the list set out in the

rule).  The 2003 amendment to Rule 4.4(A) extended the reach of state court jurisdiction

to "any basis not inconsistent with the Constitutions of this state or the United States."

Ind. Tr. R. 4.4(A); *LinkAmerica Corp.*, 857 N.E.2d at 967.  Therefore, personal

jurisdiction must be consistent with the Federal Due Process Clause, and the retention of

the enumerated acts found in Rule 4.4(A) serves as a handy checklist of activities that

usually support personal jurisdiction, but does not limit the exercise of personal

jurisdiction.  *Id.*  This court therefore has jurisdiction[4] so long as Rieke can show that

American Flange had sufficient minimum contacts with Indiana such that jurisdiction

does not offend 'traditional notions of fair play and substantial justice.' *Int'l Shoe Co. v.*

*Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463

(1940), *r'hrng. denied*).

   Minimum contacts are established through "some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 475 (1985).  If the defendant's contacts are continuous and systematic

general business contacts, then a court may exercise "general jurisdiction" over the

defendant even when the controversy is unrelated to those contacts. *Helicopteros*

*Nacionales de Colom., S .A. v. Hall,* 466 U.S. 408, 414-15, 415 n. 9 (1984).

   In the absence of such continuous systematic contacts, "specific jurisdiction" may

still be appropriate if the litigation is related to the defendant's contacts with the forum

state. *Id.* at 414 n. 8.  It is not necessary that the defendant be present in the state,

_____

   [4] Under either the former two-step inquiry or the collapsed test under Indiana law, the
Court does not have personal jurisdiction for the reasons stated herein.

"although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there." *Burger King,* 471 U.S. at 476. A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). But a defendant cannot be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (citations omitted).

If the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable. *Id.* at 477. However, the Court will not get to the question of reasonableness here, since the case is one where jurisdiction does not exist.

## A.   SPECIFIC JURISDICTION

Defendant American Flange asserts that specific jurisdiction does not exist over American Flange in Indiana because precedent clearly holds that, in a situation where a defendant in a prior TTAB proceeding seeks review of that decision in district court, the cause of action arises in the home forum of the TTAB plaintiff, in this case, American Flange's home state of Illinois. Def's Memo in Support at 5 (citing *E. & J. Gallo Winery v. Candelmo*, 192 U.S.P.Q. 210, 211-12 (D.D.C. 1976) (noting that in the area of commercial torts, the claim is deemed to arise where the plaintiff suffered injury to his

business); *Lubrizol Corp. v. Neville Chemical Co.*, 463 F.Supp. 33, 35 (D.C. Ohio 1978) (holding that an action seeking juridical review of a TTAB trademark registration decision does not arise in the district court plaintiff's home state and thus does not have such a connection with plaintiff's home state to permit a finding that it arose within its jurisdiction)).  Furthermore, American Flange contends that, regardless of the reach of Indiana's Trial Rule 4.4, there is no specific jurisdiction over American Flange because Rieke does not allege, because it cannot, that its seeking review of the D.C.-based TTAB's Decision "arises out of" those alleged acts.  Def's Memo in Support at 8. Rather, Rieke merely seeks reversal of an administrative decision that is itself completely unrelated to and that makes no mention of any alleged activities by American Flange in the Indiana.  *Id.*  Rieke asserts in this forum that the TTAB made certain legal errors in holding that Rieke's trademarks should not be registered.  *Id.* (citing to the Complaint). In other words, American Flange argues that Rieke cannot establish any nexus between the limited subject of these unique proceedings and American Flange's activities in Indiana, and by law the action arises outside of Indiana.  Def's Memo in Support at 9.

Not so surprisingly, Plaintiff Rieke does not contradict American Flange's contention that no specific jurisdiction exists.  Instead, Rieke asserts that "[i]n the present case, there is no need to consider "specific jurisdiction" as a clear and sufficient basis in fact and law exists for this Court to exercise such general personal jurisdiction over American Flange in this action."  Plf's Response at 7.

This Court has carefully reviewed Rieke's Complaint, including the attached Exhibit A consisting of the TTAB's Decision.  Specifically, the Complaint alleges that "[t]his Court has personal jurisdiction over American Flange because, on information and belief, American Flange does business in this State and District and has supplied or contracted to supply or to be rendered goods or materials furnished or to be furnished in this District." Complaint at ¶ 7.  Therefore, the Complaint does not indicate that the cause of action relates to American Flange's contacts with Indiana.  Further, the TTAB's Decision never even mentions the State of Indiana, nor does the TTAB's Decision in any way relate to or arise out of American Flange's contacts with Indiana.  Therefore, based on the record and the arguments of counsel, this Court must conclude that Rieke has failed to make a *prima facie* showing of specific jurisdiction over Defendant American Flange.  *See Helicopteros Nacionales de Colom.,* 466 U.S. at 414 n. 8 (discussing that "specific jurisdiction" may be appropriate if the litigation is related to the defendant's contacts with the forum state).  The record simply will not support the conclusion that American Flange has purposefully availed itself of the benefits of conducting business in Indiana with respect to this litigation.  *See Purdue Research Foundation,* 338 F.3d at 787 (declining to find specific jurisdiction on grounds where plaintiff failed to make *a prima facie* showing of the same).

**B.     GENERAL JURISDICTION**

Defendant American Flange argues that jurisdiction over it is proper only if

11

Plaintiff Rieke can show that American Flange has such continuous and systematic contacts with Indiana, that it can be sued in Indiana even on causes of action not arising here. Def's Memo in Support at 9. As such, something much more than de minimis sales are required to support the exercise of general jurisdiction under the Due Process Clause. *Id.* at 9-10 (citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 448 (1952), *r'hrng. denied* (holding that jurisdiction existed where a Philippine company's president carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984) (comparing the defendant's contacts with the general business activities present in *Perkins* and concluding that sales of magazines in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities); *Helicopteros,* 466 U.S. at 416 (comparing defendant's contacts with the kind of continuous and systematic general business contacts found to exist in *Perkins*, and concluding that the purchase of helicopters and training of personnel in the forum failed to meet the test)). Furthermore, Defendant American Flange asserts that the Seventh Circuit, and its sister circuits, have also held that mere sales activities in a foreign district are insufficient to support general jurisdiction. Def's Memo in Support at 10-11 (citing *Purdue Research Foundation,* 338 F.3d at 787 (holding that contacts must be so extensive to be tantamount to the defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana Court in any litigation arising out

of any transaction taking place anywhere); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370

(5th Cir. 1987) (holding that the federal court in Texas could not assert jurisdiction over a

foreign manufacturer based on a crash that happened in a foreign district, even though the

defendant sold nearly $250 million worth of parts in Texas, due in part to nationwide

advertising and independent dealers located in Texas)) and Def's Reply at 4.  Lastly,

Defendant American Flange argues that even this District has noted that sales of a

nonresident defendant's products in the forum state give rise to general personal

jurisdiction only where the amount of the sales is "significant." Def's Memo in Support

at 10-11 (citing *Charlesworth v. Marco Manuf. Co.*, 878 F.Supp. 1196, 1201 (N.D. Ind.

1995) (holding that the amount of defendant's products [between .28% and .36%] is not a

significant amount and will not support jurisdiction; and, citing with favor *Roman v.

Geissenberger Mfg. Corp.*, 865 F.Supp. 255, 261 (E.D.Pa. 1994), *abrogated by Eagle

Traffic Control, Inc. v. James Julian, Inc.,* 933 F.Supp. 1251 (E.D.Pa. 1996)).  And de

minimus sales are patently insufficient to support general jurisdiction. *Id.* at 11 (citing

*L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1433 (N.D. Ind. 1994)

(holding that 8% of the defendant's national sales in the forum state was insignificant and

did not support the exercise of general jurisdiction)).  Therefore, American Flange

contests that its sales are commensurate with the minimal sales in *Charlesworth*, less than

those in *L.H. Carbide* and *Romann*, and even far less than those in *Beach* or *Nichols*[5].

---

[5] *See* Def's Memo in Support at 11, n. 2 citing *Nichols v. G.D. Searle & Co.*, 991 F.2d
1195 (4th Cir. 1993) (holding that general jurisdiction did not exist where the defendant

Def's Memo in Support at 12.  Notwithstanding the minimal sales, other contacts with Indiana by American Flange are far less than the defendant's contacts were with the state of Texas in *Helicopteros*.  *Id.*  Ultimately, Defendant American Flange argues that it cannot be expected to answer in Indiana for claims unrelated to this forum, that have absolutely no bearing on the underlying claim, where American Flange lacks the measure and character of contacts that will suffice to subject it to suit in Indiana by all comers on any and all claims.  Def's Memo in Support at 12-13.

In opposition, Plaintiff Rieke argues that Defendant's contacts with Indiana must be examined together and not in isolation from each other.  Plf's Response at 7 (citing *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1239 (Ind. 2000)).  Rieke asserts that a calculated "percent of sales" is not the legal standard for jurisdiction, as this could lead to inequitable and unjust results.  *Id.* at 8 (citing *Ty, Inc. v. Baby Me, Inc.*, 64 U.S.P.Q.2d 1442, 1447 (N.D. Ill. 2001); *Anthem*, 730 N.E.2d at 1239 (holding that although the percentage of the defendant's nationwide business that is conducted in Indiana may be a factor to consider in determining whether there is personal jurisdiction, it is by no means the only or dominate factor; and citing *Gallert v. Courtaulds Packaging Co.*, 4 F.Supp.2d 825, 831 (S.D. Ind. 1998) which rejected the argument that .0055% annual sales was insufficient for jurisdiction)).  Rieke states that *Romann*, 865 F.Supp. at

_____

employed between 17 and 21 detail representatives and 2 supervising representatives, most of whom were residents of the forum, kept samples and promotional materials in the forum, and where there was 9-13 million dollars worth of sales between 1983 and 1987 in the forum, which constituted approximately two percent of total sales).

261, actually affirmed that it is the overall nature of the activity, rather than its

quantitative character, that determines whether a court may have general personal

jurisdiction.  Plf's Response at 8.  In addition, in *L.H. Carbide Corp*, 852 F.Supp. at

1433-34 and *Charlesworth*, 878 F.Supp. at 1201-02, the courts analyzed the substantiative

quantity and quality of the defendant's contacts with Indiana.  Plf's Response at 8-9.

After recanting the facts, Plaintiff Rieke relies primarily (if not exclusively) on *Best Lock

Corp. v. Ilco Unican Corp.*, 32 U.S.P.Q.2d 1223 (S.D. Ind. 1994) and *Eli Lilly and Comp.

v. Sicor Pharmaceuticals, Inc.*, 2007 WL 1245882 (S.D. Ind. 2007) for the proposition

that the substantial and regular contacts with Indiana by American Flange, such as

personal visits, telephone calls, email and other correspondence, marketing, and direct

and indirect sales, which, although not directly reflected on any sales report, subject

American Flange to jurisdiction in Indiana.  Plf's Response at 9-14.  In *Best Lock Corp.*,

the defendant's sales were unrelated to the lawsuit, but the court found that general

jurisdiction existed where the defendant's sales to over 35 Indiana customer represented

less than 1% in its total annual sales.  32 U.S.P.Q.2d at 1224.   During oral argument,

Plaintiff conceded that it is not relying on a stream of commerce theory, but that based on

*Eli Lilly and Comp.*, there is jurisdiction here because, first, American Flange's contacts

with Indiana are tied to the sales of products, and second, because there were regular and

consistent contacts with Indiana which are separate and apart from its sales, where

defendant's actions show targeted marketing efforts and regular contacting of distributors

which is not random or fortuitous.

This court has carefully analyzed the case law cited by the parties, as well as other relevant authority, and has closely considered the parties' filings and well-presented oral arguments regarding the issue raised here.  There is no doubt that the contacts here, do not amount to the continuous and systematic contacts recited in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 448 (1952), *r'hrng. denied*, where during war and immediately thereafter the president/general manager of a foreign corporation maintained an office, conducted personal and business affairs, maintained office files, carried on correspondence relating to the business and to its employees, issued salary checks, maintained two active bank accounts, held directors' meetings, supervised policies dealing with the rehabilitation of the corporation's properties, purchased machinery, and made key business decisions, all in Ohio, even though none of the company's mining properties were in Ohio.  In essence, the United States Supreme Court in *Perkins* found that the president conducted the business of the company in Ohio as if the company was situated in Ohio.  *See L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1435 (N.D. Ind. 1994).  Further, this is not a case where the Defendant American Flange has "continuously and deliberately exploited [Indiana's] market," as American Flange must "reasonably anticipate being haled into court [here] . . ." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-81 (1984) (jurisdiction existed where the defendant produced a national publication aimed at a nationwide audience, and a

16

substantial number of copies were regularly sold and distributed to the forum).

The facts of the present case indicate that Defendant American Flange had none of the pervasive contacts with the State of Indiana as the defendant in *Perkins* did.  The only presence of American Flange in Indiana is Mr. Markovic's personal visits 6 to 8 times a year, a couple of employees who randomly service or make phone calls or other correspondence with American Flange's limited Indiana customers, and sales to a small number of Indiana customers amounting to less than 1% of its total annual sales in the nation.  Further, American Flange maintains a website; however, this website does not allow customers to purchase products online as defendant's use of the website is for informational purposes.[6]  These contacts, including any attempt to get others to specify American Flange's products to generate indirect sales, does not rise to the level of continuous and systematic contacts needed to find the existence of general personal jurisdiction.  Further, the contacts are not of the quality or quantity necessary to enable this Federal District Court to exert general personal jurisdiction over the non-resident Defendant.

Indeed, the present case is more akin to *Charlesworth v. Marco Manuf. Co.*, 878

---

[6] *See F. McConnell and Sons, Inc. v. Target Data Systems, Inc.*, 84 F.Supp2d 961, 971 (N.D.Ind. 1999) (discussing the categories of Internet/electronic commerce cases for the purpose of determining which category more or less likely establishes jurisdiction, where in the first category defendants actively do business over the Internet, in a second category the user can exchange information with the host computer and the level of interactivity and commercial nature of the exchange of information must be determined, and in a third category, the Internet site only passively provides information or advertisements).

F.Supp. 1196, 1201 (N.D. Ind. 1995) and  *L.H. Carbide Corp. v. Piece Maker Co.*, 852

F.Supp. 1425, 1435 (N.D. Ind. 1994).  Like the defendants in *Charlesworth* and *L.H.*

*Carbide Corp.*, the defendant in this case, American Flange, is a foreign corporation with

its principal place of business located outside of Indiana, it has no offices in Indiana, no

sales people based in Indiana, no bank accounts maintained in Indiana, and it is not

registered to do business in Indiana.  *See Charlesworth*, 878 F.Supp at 1201; *L.H.*

*Carbide Corp.*, 852 F.Supp. at 1433-34.  Further, as in *L.H. Carbide Corp.* where the

defendant had an employee who solicited business from a scant number of Indiana

customers and who would visit those customers several times a year, call them, and

provide service for setting up products purchased by them, so too, American Flange had a

few employees directly contacting a limited number of Indiana customers on a limited

basis.  Lastly, the defendants in *Charlesworth* and *L.H. Carbide Corp.* had a greater

percentage of annual sales that occurred in Indiana, than did American Flange. As the

Courts held in *Charlesworth* and *L.H. Carbide Corp.*, the Defendant's contacts with

Indiana are insufficient to support the exercise of general personal jurisdiction over the

Defendant.

Of final note, *Best Lock Corp. v. Ilco Unican Corp.*, 32 U.S.P.Q.2d 1223 (S.D.

Ind. 1994) and *Eli Lilly and Comp. v. Sicor Pharmaceuticals, Inc.*, 2007 WL 1245882

(S.D. Ind. 2007) do not help the Plaintiff here.  *Best Lock Corp.* was not only handed

down before *Charlesworth, L.H. Carbide Corp.,* and *Purdue,* but it does not provide a

useful analysis of the specific facts as applied to the law regarding general jurisdiction. Furthermore, *Eli Lilly and Comp.,* as addressed by the defendant's during oral argument in this case, entailed roughly more than five times more visits to Indiana by Eli Lilly than there was by the American Flange employees, Eli Lilly had 725 Indiana purchasers of the defendant's products, engaged in consistent and regular telemarketing calls and had advertisements in national trade journals, and Eli Lilly's sales in Indiana amounted to approximately 3-5% of its total U.S. sales (or hundreds of millions of dollars).  Here, even considering indirect contacts and marketing efforts by American Flange with Indiana, there were far fewer contacts, customers, and sales (less than 1 million over almost 5 years).

The quantity and quality of American Flange's contacts with Indiana, are not the type of "continuous and systematic" contacts needed for this Court to assert general personal jurisdiction over Defendant American Flange.  Plaintiff Rieke has thus failed to make out a *prima facie* case for jurisdiction such that it would be fair to haul American Flange into this Indiana federal court.

**C.    TRANSFER**

The Court, having determined that it lacks personal jurisdiction over Defendant American Flange, now turns to Plaintiff Rieke's alternative motion to transfer this action pursuant to 28 U.S.C. § 1631 to the Northern District of Illinois, which is admittedly American Flange's home district.  Plf's Response at 14.  Rieke argues that transfer, not

19

dismissal would clearly be in the interest of justice because the present action was timely

filed, but the time for Rieke to commence another civil action or direct appeal to appeal

the TTAB's decision has long passed, therefore a dismissal would effectively preclude

Rieke from appealing the decision.  *Id.* at 14-15 (citing *O'Neal v. Hatfield*, 921 F.Supp.

574, 576 (S.D.Ind. 1996) (holding that transfer under 28 U.S.C. § 1631 served the interest

of justice because plaintiffs would likely be barred by the applicable statute of limitations

from refiling the suit)).

　　　American Flange argues that under 28 U.S.C. § 1631, there is a split of authorities

as to whether a transferor court that lacks personal jurisdiction can properly transfer the

case to a court where it may have been brought in the interest of justice.  Def's Reply at

8-9 (citing 15 *Wright Miller & Cooper Federal Practice and Procedure, Jurisdiction*

Section 3842) (other citations omitted)).  Although in *Anderson v. SportMart, Inc.*, 57

F.Supp.2d 651, 664-65 (N.D.Ind. 1999) the Court held that section 1631 can apply to

cases involving transfer for lack of personal jurisdiction, American Flange submits that

*Wright & Miller* reflects the better view.  Def's Reply at 9.   Further, American Flange

argues that even if section 1631 were to apply, the court should deny transfer because the

interest of justice would not be served where Rieke had an absolute right to appeal the

TTAB decision to the U.S. Court of Appeals for the Federal Circuit and chose not to do

so. *Id.* (citing *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir. 1988) and *Cote v. Wadel*,

796 F.2d 981, 984-85 (7th Cir. 1986) (denying motions to transfer under sections 1404(a)

and 1406(a) where the transferor court lacked personal jurisdiction over the defendants)).

28 U.S.C. § 1631 provides for transfer where, as here, the court in which the action is originally filed finds that there is a want of jurisdiction.  In such a case, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.  Section 1631 further provides that the action shall proceed as if it had been filed in the transferee court on the date upon which it was filed in the transferor court, thus allowing plaintiff to avoid being barred by statutes of limitations from re-filing the suit in the proper jurisdiction. *See* 28 U.S.C. § 1631.

The Court finds that in this case it is in the interest of justice to transfer the action to the Northern District of Illinois, which has personal jurisdiction over the Defendant. Otherwise, were we to dismiss the case, Plaintiff Rieke would likely be barred by the applicable statute of limitations from re-filing the suit in the proper jurisdiction.  *O'Neal*, 921 F.Supp. At 576 (citing *Martin v. Nickels and Dimes, Inc.,* 804 F.Supp. 83 (D.Hawaii 1992) (transfer under section 1631 would serve interest of justice because dismissal could have barred filing of new application in appropriate forum)).  Furthermore, the parties have admitted that there is jurisdiction over the Defendant in the Northern District of Illinois, and this Court finds that despite the fact that this litigation, as most litigation, has already been both lengthy and costly, transfer of the action will work no perceivable hardship on American Flange.  Accordingly, this Court grants Plaintiff Rieke's request

and transfers the above-referenced cause of action to the United States District Court for the Northern District of Illinois.

### V.  CONCLUSION

Based on the foregoing analysis, Defendant American Flange's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 10) is **DENIED**.  However, because there is no personal jurisdiction over the Defendant in this Court, Plaintiff Rieke Corporation's motion to transfer this case to the United States District Court for the Northern District of Illinois is **GRANTED** (see Docket Nos. 37 (sealed) and 38 (redacted)).  It is further ordered that the Clerk of this Court shall transfer this matter to the Northern District of Illinois.

**SO ORDERED**.

**DATED: June 12, 2007**

_____ S/ ALLEN SHARP _____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**